**William T. SCOTT, Appellant,**

v.

**HANDY–ANDY, INC., Appellee.**

**No. 15107.**

Court of Civil Appeals of Texas, San Antonio.

Jan. 10, 1973.

Rehearing Denied Feb. 7, 1973.

James R. Warncke, San Antonio, for appellant.

Stayton, Maloney, Black, Hearne & Babb, Austin, Dodson, Duke & Branch, San Antonio, for appellee.

KLINGEMAN, Justice.

Appellant, William T. Scott, brought this action individually and as a member of, and on behalf of, other candidates on the ballot for election to the City Council of the City of San Antonio against appellee, Handy-Andy, Inc., pursuant to the provisions of Article 14.07, Texas Election Code, Vernon's Tex.Rev.Civ.Stat.Ann., which prohibit corporations from making donations to political campaigns and provide that any corporation violating such article shall be civilly liable for double the amount of such contribution to each opponent of the candidate favored by such gift. Appellee filed a motion for summary judgment in which it asserted that Article 14.07 of the Election Code was void and unconstitutional under Article III, Section 35, of the Constitution of the State of Texas, Vernon's Ann.St. The trial court granted appellee's motion for summary judgment and decreed that appellant take nothing,

and held that Article 14.07, Subdivision (b) of the Texas Election Code is void, invalid and unconstitutional under Article III, Section 35, of the Texas Constitution, in that such statutory provision providing for recovery of double damages is penal in nature and that no notice thereof was given in the caption to Acts 1951, Fifty-second Legislature, page 1097, Chapter 492, or any amendment thereto.

The only question before this Court on this appeal is whether or not the provision for the allowance of recovery by a candidate for office of double the amount of any contribution made to his opponent by a corporation is unconstitutional as being in violation of Article III, Section 35, of the Constitution of the State of Texas,[1] which requires notice in the caption of the statute as to the subject matter thereof.

The pertinent provisions of the Election Code are as follows:

"Art. 14.07 Corporations not to contribute

"(a) Except to the extent permitted in Article 213 of the Penal Code of Texas, 1925, no corporation shall give, lend or pay any money or other thing of value, or promise to give, lend, or pay any money or other thing of value, directly or indirectly, to any candidate, campaign manager, assistant campaign manager, or any other person, for the purpose of aiding or defeating the nomination or election of any candidate or of aiding or defeating the approval of any political measure submitted to a vote of the people of this state or any subdivision thereof; provided, however, that nothing in this section or in Article 213 of the Penal Code shall prevent the making of a loan or loans to any candidate for campaign purposes by any corporation which is legally engaged in the business of

---

1. "No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

lending money and which has conducted such business continuously for more than one year prior to the making of such loan, provided the loan is made in due course of business and is not directly or indirectly a contribution.

"(b) Any corporation making or promising a gift, loan, or payment to any candidate, campaign manager, assistant campaign manager, or other person in violation of Paragraph (a) of this Section [this article] shall be civilly liable for double the amount or value of such loan or gift, promised or made, to each opponent of the candidate favored by such gift, loan, or payment, or to the particular candidate or candidates opposed by such gift, loan, or payment." [2]

The caption herein involved reads as follows:

"An Act to adopt and establish an election code for the State of Texas, to revise and recodify Title 50 of the Revised Civil Statutes of 1925 of Texas, and all amendments thereto, to repeal all Acts in conflict herewith, provided, however, that nothing in this Act shall be construed as repealing or in any way affecting the legality of any penal provision of the existing law, and further provided that nothing in this Act shall in anywise alter, amend, or repeal House Bill No. 43, Acts, Regular Session, Fifty-second Legislature; providing a saving clause; providing an appropriation; providing the effective date; and declaring an emergency."

This caption has been construed by two decisions by the highest courts of this state. Appellant relies on the decision of the Supreme Court in Ex parte Jimenez, 159 Tex. 183, 317 S.W.2d 189 (1958), which appellant says is dispositive of this cause. This was an original habeas corpus

proceeding by relators who contended that they were being illegally restrained by the Sheriff of Webb County by an allegedly void contempt judgment in the district court of such county purportedly rendered pursuant to Article 9.02 of the Election Code because of the refusal of the relators to testify in a court of inquiry held before said judge in said county under said statute. Relators contended that Article 9.02 was unconstitutional and inoperative because of the insufficiency of the caption of the bill enacting the Election Code. The Supreme Court said:

"The contention that Art. 9.02 is invalid under Art. III, Sec. 35 of the State Constitution for deficiency of the caption of the corresponding act is without merit. The act was adopted in 1951 and self-styled in the enacting clause as 'the Election Code of the State of Texas'. See Gen. and Spec. Laws, 52nd Legis., Reg.Sess., 1951, Chap. 492; Vernon's, Vol. 9, supra. Its approximately 100 printed pages and 250 separate sections supplant nearly all of the complicated mass of statutes theretofore governing the election process and, like the bride's wedding raiment, almost necessarily include 'something old, something new, something borrowed, something blue'. In writing the caption, the authors pursued the sensible, if not the only possible, course, making it brief and general rather than extensive and particularized. Even so, it is more elaborate than the caption of the similar and far larger enactment known as the Revised Civil Statutes of 1925, which read merely, 'A Bill to be entitled "An Act to Adopt and Establish the 'Revised Civil Statutes of the State of Texas'"'. The instant caption reads:

" 'An Act to adopt and establish an election code for the State of Texas, to

2. The Texas statute immediately preceding in time to the act in issue on this appeal was Article 3171 of the Revised Civil Statutes of 1925. Such statute prohibited corporations from making contributions, but it did not impose on the corporations which violated the provisions of that statute any penalties or sanctions of any nature.

revise and recodify Title 50 of the Revised Civil Statutes of 1925 of Texas, and all amendments thereto, to repeal all Acts in conflict herewith, provided, however, that nothing in this Act shall be construed as repealing or in any way affecting the legality of any penal provision of the existing law, and further provided that nothing in this Act shall in anywise alter, amend, or repeal House Bill No. 43, Acts, Regular Session, Fifty-second Legislature; providing a saving clause; providing an appropriation; providing the effective date; and declaring an emergency.'" 317 S.W.2d at 193.

The Court, in holding that Article 9.02 was not unconstitutional or void as violating Section 35, Article III, of the Texas Constitution, said:

"Actually, in such cases, the real question is often not whether the caption adequately refers to the provision of the act under attack, but whether the act itself, even with a perfect caption, does not violate the first requirement of the same constitutional section that 'No bill * * * shall contain more than one subject'.

"But Art. 9.02, supra, does not violate either the latter provision nor the one requiring that the subject be 'expressed in its title'. Since the legislature undoubtedly has as much power to enact a code as it does a single law of narrowest scope, and since any sort of 'code' necessarily involves many different kinds of individual provisions, none of these latter will violate the 'one subject' restriction, if it has any logical relationship to the general subject. We consider it beyond dispute that there is such a relationship between the general subject of elections and a particular provision (Art. 9.02) for a court of enquiry to expose fraudulent electoral practices. The latter is merely one of the many different means stipulated in the code to insure a more pure and orderly conduct of elections.

"This same consideration applies also to the requirement that the subject of the act or bill be 'expressed in its title (caption)'. The captional words, 'to adopt and establish an election code', are clearly broad enough to include the subject matter of Art. 9.02, and are not limited by the succeeding words, 'to revise and recodify Title 50'. Indeed, the latter phrase itself is probably broad enough to put any reasonable caption reader on notice that he will find new matter in the body of the bill." 317 S.W.2d at 193–194.

Appellee relies on the decision of the Texas Court of Criminal Appeals in Ex parte Meyer, 172 Tex.Cr.R. 403, 357 S.W. 2d 754 (1962). *Meyer* involved a prosecution for false swearing to an affidavit required by Article 14.08 of the Texas Election Code, in which Meyer was required to swear to a statement of all gifts and loans received and payments made by him on behalf of his candidacy for a public office in the 1960 election. Under such article, either the failure to file such affidavit, or the filing of a false affidavit, is punishable by fine and imprisonment in the penitentiary. After Meyer's arrest, he brought an application for writ of habeas corpus directly to the Court of Criminal Appeals asserting the invalidity of Article 14.08, Subdivision (g), Texas Election Code, which imposed a penal sanction, on the grounds that the caption to the Election Code failed to give notice that such provisions were included. The Court, in agreeing with such contention, said:

"Section 35 of Article III of the Constitution Vernon's Ann.St., prohibits the inclusion in a bill of any subject not expressed in the title.

"Reliance is had by the State upon the opinion of the Supreme Court of this State in Ex parte Jimenez, 159 Tex. 183, 317 S.W.2d 189, which upheld the constitutionality of that portion of Article 9.02 which related to the holding of a court of inquiry to expose fraudulent electoral

practices. The question of the validity of a penal provision of the Election Code was not before the court in that case, and the same is not authority in the case at bar." 357 S.W.2d at 755.

The Court further said:

"We have here a statute which says in its caption that it purports to revise a *civil* statute, that the existing penal laws are not affected, and *nowhere gives notice to the Legislature or the public that any penal provisions are to be found in the Act.*

"If the presence of notice to the Legislature and the public have caused a difference of opinion in this Court, after careful study and with the aid of able counsel, then it is apparent that such notice was not brought home to the members of the Legislature or the public.

"In Texas-Louisiana Power Co. v. City of Farmersville, Tex.Com.App., 67 S.W.2d 235 (differentiated by the Supreme Court of this State in Ex parte Jimenez, supra), wherein the caption failed to mention an important change in the law, the Supreme Court held that the caption of the Act in the power company case was misleading in that it affirmatively suggested that the Act did not contain the provision in question. We have here a caption which *affirmatively suggests that it contains no penal provision.*" 357 S.W.2d at 755.

■ It is well settled that the caption of an act should be liberally construed so as to uphold its validity if at all possible, and the courts of this state have uniformly held that Section 35 of Article III should be given a liberal and not a strict construction. C. Hayman Construction Co. v. American Indemnity Co., 471 S.W.2d 564, 566 (Tex.1971); Central Education Agency v. Independent School District, 152 Tex.

56, 254 S.W.2d 357 (1953); Continental Bus System, Inc. v. Carney, 310 S.W.2d 676 (Tex.Civ.App.—Austin 1958, writ ref'd). The constitutional requirement that the subject of the act be embraced within its title is met where the provisions of the statute relate to the same subject, have a mutual connection, and are not foreign to the subject expressed in the title. Central Education Agency v. Independent School District, supra; Stone v. Brown, 54 Tex. 330, 343 (1881); Section 35, Article III, Texas Constitution.

■ In our opinion, the decision of the Supreme Court in Ex parte Jimenez is controlling on us and is dispositive of this cause. We agree with the concurring opinion of Presiding Judge Woodley in Ex parte Meyer wherein he said:

"As I see it, the Legislature had authority to adopt and establish an election code without repealing the penal provisions of existing statutes and to provide a punishment by fine or imprisonment for the violation of certain of its provisions, without any reference in the caption to its penal provisions. Ex parte Jimenez, 159 Tex. 183, 317 S.W.2d 189, 193; Doeppenschmidt v. International and G. N. R. Co., 100 Tex. 532, 101 S.W. 1080; Johnson v. Martin et al., 75 Tex. 33, 12 S.W. 321.

"The provision in the caption that nothing in the election code shall be construed as repealing or in any way affecting the legality of any penal provision of the existing law does not suggest to me that the statute contains no penal provision. This is especially true because one or more of the acts for which a fine or imprisonment is provided in the election code do not appear to have been punishable as offenses under existing statutes." [3] 357 S.W.2d at 756.

---

3. In *Meyer*, the relator was not discharged, the court holding that an indictment charging that the defendant had falsely sworn to an affidavit required by the election law as to campaign expenses was sufficient basis for perjury prosecution despite invalidity of the Election Code penal provision. Judge Woodley

We hold that the trial court erred in holding that Article 14.07, Subdivision (b), of the Texas Election Code is void, invalid and unconstitutional under Article III, Section 35, of the Constitution of the State of Texas. Appellee's motion for summary judgment was improperly granted.

The judgment of the trial court is reversed and remanded.

concurred solely on the basis that the doing of the acts set forth in the indictment is punishable under Article 302 of

the Penal Code, which defines the offense of perjury, and that the relator should be remanded to custody.